## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| EDWIN BARTOK, on behalf of himself and other similarly situated individuals, BARBARA LEE, on behalf of herself and other similarly situated individuals, and THE MANUFACTURED HOME FEDERATION OF MASSACHUSETTS, INC., on behalf of its members and other similarly situated individuals, | X X X X X X X |
| Plaintiffs, | X X |
| vs. | X X |
| HOMETOWN AMERICA, LLC, HOMETOWN AMERICA MANAGEMENT, LLC, HOMETOWN OAK POINT I, LLC, HOMETOWN OAK POINT II, LLC, MILLER'S WOODS MHC, LLC and RIVER BEND MHC, LLC, | X X X X X X X |
| Defendants. | X X |

**CASE NO: 21-CV-10790-LTS**

**JURY TRIAL DEMANDED**

_____

## FIRST AMENDED CLASS ACTION COMPLAINT
## FOR INJUNCTIVE RELIEF AND DAMAGES

### INTRODUCTION

1.      Through its affiliated entities, Defendant Hometown America, LLC ("Hometown") indirectly owns and manages dozens of manufactured housing communities across the United States, communities in which thousands of resident or tenant households pay rent so that their manufactured homes may sit on land in each such community, land that is typically called a home site and that is leased to them by Hometown or one of its affiliates.

2.      In Massachusetts, Hometown indirectly owns and manages six such communities, including Miller's Woods and Riverbend ("Miller's Woods") located in Athol and Oak Point located in Middleborough.

3.     All but one of Hometown's Massachusetts communities, including Miller's Woods and Oak Point, are 55+ communities.

4.     The purchase price of a manufactured home is typically less than that of a traditional home because the construction of a manufactured home occurs in a factory and the purchase price of a manufactured home does not include the land on which the home is eventually assembled.

5.     Because manufactured housing offers less expensive homeownership opportunities for households that might not otherwise be able to purchase a home, the public policy of Massachusetts is to preserve manufactured housing as affordable housing for the elderly, disabled persons and other vulnerable individuals.

6.     Since 1973, the Massachusetts Manufactured Housing Act has sought to preserve the long-term affordability of manufactured housing communities in the Commonwealth by, among other requirements, obligating manufactured housing community owners to charge the same rents for all similarly-situated home sites in a community, an obligation codified at Section 32L(2) of the Act.

7.     Section 32L(2) specifically preserves the long-term affordability of manufactured housing in Massachusetts by ensuring that home-site rent is dictated by the services each rent-payer receives, and not the vagaries of the local rental housing market, as well as by ensuring that the costs of operating the community are born equally by all rent-payers.

8.     This lawsuit arises from Hometown's refusal to adhere to the requirements of Section 32L(2), that is, Hometown's adoption of a general business practice, including at Miller's Woods and Oak Point, of charging higher rents to new community entrants and driving

up the cost of what is supposed to be affordable housing – a practice prohibited by Section 32L(2).

9.      Plaintiff Edwin Bartok is a more recent entrant into Miller's Woods and has paid a monthly home-site rent that has been higher than many of his neighbors, despite leasing a similar home site and receiving similar services from Hometown.

10.      Plaintiff Barbara Lee is a more recent entrant into Oak Point and has paid a monthly home-site rent that has been higher than many of her neighbors, despite leasing a similar home site and receiving similar services from Hometown.

11.      Plaintiff The Manufactured Home Federation of Massachusetts, Inc. ("MFM") is a membership-based nonprofit organization with members who more recently entered Miller's Woods or Oak Point, including Mr. Bartok as well as Ms. Lee, and thus who pay rents that are higher than the rents paid by their neighbors who lease similar home sites and receive similar services from Hometown.

12.      By this action, the MFM – standing in the shoes of its members – and Mr. Bartok, on behalf of themselves and all similarly situated current residents or tenants who reside in or are otherwise obligated to pay rent to Miller's Woods, seek injunctive relief requiring that Hometown and its affiliates adopt a rent structure at Miller's Woods which complies with the requirements of Section 32L(2) of the Act.

13.      By this action, the MFM – standing in the shoes of its members – and Ms. Lee, on behalf of themselves and all similarly situated current residents or tenants who reside in or are otherwise obligated to pay rent to Oak Point – seek injunctive relief requiring that Hometown and its affiliates adopt a rent structure at Oak Point which complies with the requirements of Section 32L(2) of the Act.

14.     By this action, Mr. Bartok, on behalf of himself and all similarly situated residents or tenants who have resided in or have otherwise been obligated to pay rent to Miller's Woods since June of 2015, seeks damages from Hometown and its affiliates in the amount of rent overpaid in violation of Section 32L(2) plus interest on the unlawfully collected funds.

15.     By this action, Ms. Lee, on behalf of herself and all similarly situated residents or tenants who have resided in or have otherwise been obligated to pay rent to Oak Point since June of 2015, seeks damages from Hometown and its affiliates in the amount of rent overpaid in violation of Section 32L(2) plus interest on the unlawfully collected funds.

## JURISDICTION & VENUE

16.     Defendants have invoked the jurisdiction of this Court pursuant to 28 U.S.C. §§ 1332(d) and 1453, commonly known as the Class Action Fairness Act, as well as 28 U.S.C. § 1367.

17.     Venue before the Court is proper pursuant to 28 U.S.C. §§ 1391(b) and 1441(a), as this lawsuit was initially filed in the Massachusetts Superior Court for Worcester County, a substantial part of the events or omissions giving rise to the Plaintiffs' claims has occurred within Massachusetts and the Defendants – through their business activities as described below – are properly subject to the jurisdiction of the Massachusetts courts.

## PARTIES

18.     Mr. Bartok currently resides in Miller's Woods, is an MFM member and has paid home-site rent to Hometown or its Miller's Woods affiliates since 2017.

19.     Ms. Lee currently resides in Oak Point, is an MFM member and has paid home-site rent to Hometown or its Oak Point affiliates since 2017.

20.     The MFM is a membership-based, nonprofit organization which is dedicated to protecting the rights of manufactured housing residents in Massachusetts, which has members

who reside in Miller's Woods or Oak Point, including Mr. Bartok as well as Ms. Lee, and which has an interest in ensuring that Hometown sets rent at Miller's Woods and Oak Point, respectively, in compliance with Section 32L(2) of the Act.

21.     Defendant Hometown is a Delaware limited liability company that – through its affiliates – indirectly owns and manages over 24,000 home sites located at more than 60 manufactured housing communities throughout the country, six of which are located in Massachusetts and which include Miller's Woods and Oak Point; Hometown claims its principal place of business to be in Illinois.

22.     Defendants Miller's Woods MHC, LLC and Riverbend MHC, LLC  (collectively, "Hometown Miller's Woods") are Delaware limited liability companies and affiliates of Hometown which own the land on which Miller's Woods is located and the sole business of which is to lease the community's approximately 140 home sites; the Hometown Miller's Woods Defendants claim their respective principle places of business to be in Illinois.

23.     Defendants Hometown Oak Point I, LLC and Hometown Oak Point II, LLC (collectively, "Hometown Oak Point") are Delaware limited liability companies and are affiliates of Hometown which own the land on which Oak Point is located and the sole business of which is to lease the community's approximately 975 home sites; the Hometown Oak Point Defendants claim their respective principle places of business to be in Illinois.

24.     Defendant Hometown America Management, LLC ("Hometown Management") is a Delaware limited liability company and an affiliate of Hometown that has been contracted by Hometown Miller's Woods and Hometown Oak Point to manage operations at Miller's Woods and Oak Point, respectively.

FACTS

I.      GENERAL ALLEGATIONS

25.      In 2007, Hometown – through Hometown Miller's Woods – acquired the Miller's Woods community.

26.      Since at least 2007, all home sites in Miller's Woods have been similar and the community's residents or tenants have received similar services in exchange for their home-site rent.

27.      At the time Hometown acquired Miller's Woods, the community's former owner had set home-site rent based on a resident's or tenant's date of entry into the community, such that new entrants generally paid higher rents than existing residents or tenants – despite the fact that they all leased similar home sites and received similar services in exchange for their rent.

28.      Following Hometown's acquisition of Miller's Woods, it continued the practice of charging higher rents to new entrants, even though it has acknowledged that all residents or tenants in Miller's Woods lease similar home sites and receive similar services.

29.      At all times relevant to this action, rents were charged and collected at Miller's Woods by Hometown Management at the direction of Hometown for the benefit of Hometown Miller's Woods.

30.      In 2011, Hometown – through Hometown Oak Point – acquired the Oak Point community.

31.       At the time Hometown acquired Oak Point, the community's former owner had set home-site rent based on a resident's or tenant's date of entry into the community, such that residents or tenants paid disparate rents even when they leased similar home sites and received similar services in exchange for their rent.

32.     Following Hometown's acquisition of Oak Point, it continued the former owner's practice and charged higher rents to new entrants, even when the new entrants were leasing home sites and receiving services similar to the home sites leased or services received by existing residents or tenants.

33.     At all times relevant to this action, rents were charged and collected at Oak Point by Hometown Management at the direction of Hometown for the benefit of Hometown Oak Point.

34.     Another manufactured housing community in Massachusetts which Hometown – through its affiliates – indirectly owns and manages is the Oakhill manufactured housing community, located in Attleboro.

35.     In 2012, Oakhill residents and tenants sued Hometown affiliates before the Southeastern Division of the Massachusetts Housing Court in response to Hometown's policy of charging disparate rents based on the date that an Oakhill resident or tenant had entered the community, such that residents or tenants were paying disparate rents despite leasing similar home sites and receiving similar services in exchange for their rent ("Oakhill Litigation").

36.     At all times relevant to the Oakhill Litigation, rents were charged and collected at Oakhill by Hometown Management at the direction of Hometown.

37.     In June of 2015, the Housing Court entered partial summary judgment in favor of the plaintiffs in the Oakhill Litigation – determining that Hometown's practice of charging disparate rents for similar home sites and similar services violated Section 32L(2) of the Massachusetts Manufactured Housing Act as well as Section 2(a) of the Massachusetts Consumer Protection Act.

38.     In July of 2017, the Housing Court concluded the Oakhill Litigation and incorporated its 2015 summary judgment order into a final judgment, which was subsequently appealed.

39.     In November of 2020, the Massachusetts Supreme Judicial Court resolved the Oakhill Litigation appeal and affirmed that Hometown's practice of charging disparate rents based on the date that an Oakhill resident or tenant had entered the community, such that residents or tenants paid disparate rents despite leasing similar home sites and receiving similar services in exchange for their rent, violated the Massachusetts Manufactured Housing and Consumer Protection Acts.

40.     At no time between June of 2015 and November of 2020 did either Hometown or its applicable affiliates take steps to adjust the Oakhill rent structure so that it complied with Section 32L(2).

41.     At no time between June of 2015 and November of 2020 did Hometown or its applicable affiliates – *i.e.*, the other Defendants – take steps to adjust rents at Miller's Woods or Oak Point so that those communities' respective rent structures complied with Section 32L(2).

42.     Even after the Supreme Judicial Court's 2020 resolution of the Oakhill Litigation, Miller's Woods residents or tenants continue to pay disparate rents despite leasing similar home sites and receiving similar services.

43.      Even after the Supreme Judicial Court's 2020 resolution of the Oakhill Litigation, Oak Point residents or tenants continue to pay disparate rents despite leasing similar home sites and receiving similar services.

44.     The conduct of Hometown and its applicable affiliates – *i.e.*, Hometown Management and Hometown Miller's Woods (collectively, the Miller's Woods Defendants) –

has injured Mr. Bartok by causing him to pay more rent than other Miller's Woods residents or tenants who have leased similar home sites and have received similar services in exchange for their rent.

45.     The conduct of Hometown and its applicable affiliates – *i.e.*, Hometown Management and Hometown Oak Point (collectively, the Oak Point Defendants) – has injured Ms. Lee by causing her to pay more rent than other Oak Point residents or tenants who have leased similar home sites and have received similar services in exchange for their rent.

46.     The conduct of Hometown and its applicable affiliates – *i.e.*, the other Defendants – continues to injure MFM members who presently pay rent at Miller's Woods or Oak Point by causing them to pay more rent than other Miller's Woods or Oak Point residents or tenants who lease similar home sites and receive similar services in exchange for their rent.

47.     At all times relevant to this action, Hometown and its applicable affiliates – *i.e.*, the other Defendants – took steps to maintain the confidentiality of the disparate rents charged at Miller's Woods or Oak Point so that residents or tenants in each community – including Mr. Bartok, Ms. Lee and MFM members – would be unaware of the rent paid by other residents or tenants in that community.

## II.     CLASS ALLEGATIONS

48.     On March 9, 2021, Plaintiffs caused a thirty-day demand letter to be sent to all Defendants, pursuant to the Massachusetts Consumer Protection Act.

49.      Through this letter, Mr. Bartok – on behalf of himself and all similarly-situated current or former Miller's Woods residents or tenants – demanded that the Miller's Woods Defendants reimburse current or former Miller's Woods residents or tenants those rents collected in violation of Section 32L(2) since 2015, plus interest.

50.     Through this letter, Ms. Lee – on behalf of herself and all similarly-situated current or former Oak Point residents or tenants – demanded that the Oak Point Defendants reimburse current or former Oak Point residents or tenants those rents collected in violation of Section 32L(2) since 2015, plus interest.

51.     Through this letter the MFM – standing in the shoes of its members and on behalf of all similarly situated current Miller's Woods or Oak Point residents or tenants – demanded that the Defendants implement rent structures at Miller's Woods and Oak Point, respectively, that comply with Section 32L(2).

52.     On April 16, 2021, Defendants timely responded with an unreasonable settlement offer and the instant class action lawsuit followed.

A.      Putative Miller's Woods Class

        1.      Rule 23(a) & Rule 23(b)(3)

53.     Mr. Bartok brings his Massachusetts Consumer Protection Act claim on behalf of himself and a putative class of more than 140 current and former Miller's Woods residents or tenants who have resided in or have otherwise been obligated to pay rent to Miller's Woods at any time since June of 2015 ("Miller's Woods Class"), a class so numerous that joinder of all members is impracticable.

54.     The claims of Mr. Bartok and Miller's Woods Class members will require common factual and legal determinations concerning the contours and lawfulness of the Miller's Woods rent structure in place from June of 2015 to the present which the Miller's Woods Defendants uniformly applied to Bartok and the Class members.

55.     Mr. Bartok's claims are typical of the claims of the Miller's Woods Class members, as these claims are all based on the same rent structure which the Miller's Woods

Defendants implemented uniformly as to Bartok and the Class members such that Bartok's and the members' claims are rooted in identical legal as well as remedial theories.

56.    Mr. Bartok and undersigned counsel have demonstrated that they can and will both fairly and adequately protect the interests of Miller's Woods Class members in pursuing this action.

57.    Specifically, Mr. Bartok has a demonstrated track-record of public service at Miller's Woods, is committed to obtaining a just resolution of this dispute to the benefit of all Miller's Woods Class members and lacks any reason because of which he may fail to vigorously seek the same.

58.    Specifically, the undersigned counsel is the director of a civil legal aid organization, holds both consumer law as well as class action experience, is also committed to obtaining a just resolution of this dispute to the benefit of all Miller's Woods Class members and similarly lacks any reason because of which he may fail to vigorously seek the same.

59.    The elements of the Consumer Protection Act claims brought by Mr. Bartok and the Miller's Woods Class members are provable by resolution of the above-described common questions and through the review of common evidence – *e.g.*, policy documents evidencing the Miller's Woods rent structure, the Miller's Woods rent rolls and the Miller's Woods rent ledgers – such that questions of law or fact common to Class members predominate over any questions affecting only individual members.

60.    The class action proposed by Mr. Bartok is superior to other available methods for the fair and efficient adjudication of this controversy in that the relatively modest losses suffered by individual Miller's Woods Class members would be economically infeasible to litigate on an individual basis, that such piecemeal litigation would risk inconsistent application of the critical

protections of the Massachusetts Manufactured Housing Act at issue herein and that the proposed class action presents no overly burdensome administrative hurdles.

        2.      Chapter 93A, § 9(2)

61.     Mr. Bartok brings his Massachusetts Consumer Protection Act claim on behalf of himself and a putative class of more than 140 current and former Miller's Woods residents or tenants who have resided in or have otherwise been obligated to pay rent to Miller's Woods at any time since June of 2015 ("Miller's Woods Class").

62.     Mr. Bartok is similarly situated to all members of the Miller's Woods Class insofar as both Bartok and all such members have been subjected to the same unlawful rent structure, in which residents or tenants who have leased similar home sites and have received similar services in exchange for their rent have paid disparate rents.

63.     Mr. Bartok has suffered an injury similar to the injury suffered by all members of the Miller's Woods Class insofar as both Bartok and all such Class members have overpaid rent.

64.     Mr. Bartok and undersigned counsel have demonstrated that they can and will both fairly and adequately protect the interests of Miller's Woods Class members in pursuing this action.

65.     Specifically, Mr. Bartok has a demonstrated track-record of public service at Miller's Woods, is committed to obtaining a just resolution of this dispute to the benefit of all Miller's Woods Class members and lacks any reason because of which he may fail to vigorously seek the same.

66.     Specifically, the undersigned counsel is the director of a civil legal aid organization, holds both consumer law as well as class action experience, is also committed to

obtaining a just resolution of this dispute to the benefit of all Miller's Woods Class members and similarly lacks any reason because of which he may fail to vigorously seek the same.

B.  Putative Oak Point Class

1.      Rule 23(a) & Rule 23(b)(3)

67.     Ms. Lee brings her Massachusetts Consumer Protection Act claim on behalf of herself and a putative class of more than 975 current and former Oak Point residents or tenants who have resided in or have otherwise been obligated to pay rent to Oak Point at any time since June of 2015 ("Oak Point Class"), a class so numerous that joinder of all members is impracticable.

68.     The claims of Ms. Lee and Oak Point Class members will require common factual and legal determinations concerning the contours and lawfulness of the Oak Point rent structure in place from June of 2015 to the present which the Oak Point Defendants uniformly applied to Lee and the Class members.

69.     Ms. Lee's claims are typical of the claims of the Oak Point Class members, as these claims are all based on the same rent structure which the Oak Point Defendants implemented uniformly as to Lee and the Class members such that Lee's and the members' claims are rooted in identical legal as well as remedial theories.

70.     Ms. Lee and undersigned counsel have demonstrated that they can and will both fairly and adequately protect the interests of Oak Point Class members in pursuing this action.

71.     Specifically, Ms. Lee has a demonstrated track-record of being engaged on important civic issues affecting Oak Point, is committed to obtaining a just resolution of this dispute to the benefit of all Oak Point Class members and lacks any reason because of which she may fail to vigorously seek the same.

72.     Specifically, the undersigned counsel is the director of a civil legal aid organization, holds both consumer law as well as class action experience, is also committed to obtaining a just resolution of this dispute to the benefit of all Oak Point Class members and similarly lacks any reason because of which he may fail to vigorously seek the same.

73.     The elements of the Consumer Protection Act claims brought by Ms. Lee and the Oak Point Class members are provable by resolution of the above-described common questions and through the review of common evidence – *e.g.*, policy documents evidencing the Oak Point rent structure, the Oak Point rent rolls and the Oak Point rent ledgers – such that questions of law or fact common to Class members predominate over any questions affecting only individual members.

74.     The class action proposed by Ms. Lee is superior to other available methods for the fair and efficient adjudication of this controversy in that the relatively modest losses suffered by individual Oak Point Class members would be economically infeasible to litigate on an individual basis, that such piecemeal litigation would risk inconsistent application of the critical protections of the Massachusetts Manufactured Housing Act at issue herein and that the proposed class action presents no overly burdensome administrative hurdles.

2.     Chapter 93A, § 9(2)

75.     Ms. Lee brings her Massachusetts Consumer Protection Act claim on behalf of herself and a putative class of more than 975 current and former Oak Point residents or tenants who have resided in or have otherwise been obligated to pay rent to Oak Point at any time since June of 2015 ("Oak Point Class").

76.     Ms. Lee is similarly situated to all members of the Oak Point Class insofar as both Lee and all such members have been subjected to the same unlawful rent structure, in which

residents or tenants who have leased similar home sites and have received similar services in exchange for their rent have paid disparate rents.

77.     Ms. Lee has suffered an injury similar to the injury suffered by all members of the Oak Point Class insofar as both Lee and all such Class members have overpaid rent.

78.     Ms. Lee and undersigned counsel have demonstrated that they can and will both fairly and adequately protect the interests of Oak Point Class members in pursuing this action.

79.     Specifically, Ms. Lee has a demonstrated track-record of being engaged on important civic issues affecting Oak Point, is committed to obtaining a just resolution of this dispute to the benefit of all Oak Point Class members and lacks any reason because of which she may fail to vigorously seek the same.

80.     Specifically, the undersigned counsel is the director of a civil legal aid organization, holds both consumer law as well as class action experience, is also committed to obtaining a just resolution of this dispute to the benefit of all Oak Point Class members and similarly lacks any reason because of which he may fail to vigorously seek the same.

C.     Putative Miller's Woods Rent-Payer Class

1.     Rule 23(a) & Rule 23(b)(2)

81.     Mr. Bartok and the MFM – standing in the shoes of its members – bring their Massachusetts Consumer Protection Act claims on behalf of a putative class of more than 140 residents or tenants who currently reside in or are otherwise obligated to pay rent to Miller's Woods ("Miller's Woods Rent-Payer Class"), a class so numerous that joinder of all members is impracticable.

82.     Resolution of the Class claims proposed by Mr. Bartok and the MFM will require common factual and legal determinations concerning the contours and lawfulness of the current

Miller's Woods rent structure which the Miller's Woods Defendants uniformly apply to Bartok, MFM members and all members of the Miller's Woods Rent-Payer Class.

83.    Mr. Bartok's and the MFM's claims are typical of the claims of the Miller's Woods Rent-Payer Class members, as these claims are all based on the same rent structure which the Miller's Woods Defendants implement uniformly as to Bartok, MFM members and Class members such that all operative claims are rooted in identical legal as well as remedial theories.

84.    Mr. Bartok, the MFM and undersigned counsel have demonstrated that they can and will both fairly and adequately protect the interests of Miller's Woods Rent-Payer Class members in pursuing this action.

85.    Specifically, the MFM is a membership-based nonprofit organization dedicated to advocating for the rights of manufactured housing community residents, has members who currently reside in Miller's Woods, is committed to obtaining a just resolution of this dispute to the benefit of all Miller's Woods Rent-Payer Class members and lacks any reason because of which it may fail to vigorously seek the same.

86.    Specifically, Mr. Bartok has a demonstrated track-record of public service at Miller's Woods, is committed to obtaining a just resolution of this dispute to the benefit of all Miller's Woods Rent-Payer Class members and lacks any reason because of which he may fail to vigorously seek the same.

87.    Specifically, the undersigned counsel is the director of a civil legal aid organization, holds both consumer law as well as class action experience, is also committed to obtaining a just resolution of this dispute to the benefit of all Miller's Woods Rent-Payer Class members and similarly lacks any reason because of which he may fail to vigorously seek the same.

88.     Insofar as the Miller's Woods Defendants uniformly apply the same rent structure to all Miller's Woods residents or tenants, the injunction sought by Mr. Bartok and the MFM through this action is appropriate with respect to the Miller's Woods Rent-Payer Class as a whole and will not require the participation of individual Class members to implement.

2.     Chapter 93A, § 9(2)

89.     Mr. Bartok and the MFM – standing in the shoes of its members – bring their Massachusetts Consumer Protection Act claims on behalf of a putative class of more than 140 residents or tenants who currently reside in or are otherwise obligated to pay rent to Miller's Woods ("Miller's Woods Rent-Payer Class").

90.     Mr. Bartok and the MFM members who currently pay rent at Miller's Woods are similarly situated to all members of the Miller's Woods Rent-Payer Class insofar as Bartok, those MFM members and the Miller's Woods Rent-Payer Class members are all subject to the same unlawful rent structure, in which residents or tenants who lease similar home sites and receive similar services in exchange for their rent pay disparate rents.

91.     Mr. Bartok and the MFM members who currently pay rent at Miller's Woods continue to suffer an injury similar to the injury suffered by all members of the Miller's Woods Rent-Payer Class insofar as they are all overpaying rent.

92.     Mr. Bartok, the MFM and undersigned counsel have demonstrated that they can and will both fairly and adequately protect the interests of Miller's Woods Rent-Payer Class members in pursuing this action.

93.     Specifically, the MFM is a membership-based nonprofit organization dedicated to advocating for the rights of manufactured housing community residents, has members who currently reside in Miller's Woods, is committed to obtaining a just resolution of this dispute to

the benefit of all Miller's Woods Rent-Payer Class members and lacks any reason because of which it may fail to vigorously seek the same.

94.     Specifically, Mr. Bartok has a demonstrated track-record of public service at Miller's Woods, is committed to obtaining a just resolution of this dispute to the benefit of all Miller's Woods Rent-Payer Class members and lacks any reason because of which he may fail to vigorously seek the same.

95.     Specifically, the undersigned counsel is the director of a civil legal aid organization, holds both consumer law as well as class action experience, is also committed to obtaining a just resolution of this dispute to the benefit of all Miller's Woods Rent-Payer Class members and similarly lacks any reason because of which he may fail to vigorously seek the same.

D.      Putative Oak Point Rent-Payer Class

1.      Rule 23(a) & Rule 23(b)(2)

96.     Ms. Lee and the MFM – standing in the shoes of its members – bring their Massachusetts Consumer Protection Act claims on behalf of a putative class of more than 975 residents or tenants who currently reside in or are otherwise obligated to pay rent to Oak Point ("Oak Point Rent-Payer Class"), a class so numerous that joinder of all members is impracticable.

97.     Resolution of the Class claims proposed by Ms. Lee and the MFM will require common factual and legal determinations concerning the contours and lawfulness of the current Oak Point rent structure which the Oak Point Defendants uniformly apply to Lee, MFM members and all members of the Oak Point Rent-Payer Class.

98.     Ms. Lee's and the MFM's claims are typical of the claims of the Oak Point Rent-Payer Class members, as these claims are all based on the same rent structure which the Oak Point Defendants implement uniformly as to Lee, MFM members and Class members such that all operative claims are rooted in identical legal as well as remedial theories.

99.     Ms. Lee, the MFM and undersigned counsel have demonstrated that they can and will both fairly and adequately protect the interests of Oak Point Rent-Payer Class members in pursuing this action.

100.    Specifically, the MFM is a membership-based nonprofit organization dedicated to advocating for the rights of manufactured housing community residents, has members who currently reside in Oak Point, is committed to obtaining a just resolution of this dispute to the benefit of all Oak Point Rent-Payer Class members and lacks any reason because of which it may fail to vigorously seek the same.

101.    Specifically, Ms. Lee has a demonstrated track-record of being engaged on important civic issues affecting Oak Point, is committed to obtaining a just resolution of this dispute to the benefit of all Oak Point Rent-Payer Class members and lacks any reason because of which she may fail to vigorously seek the same.

102.    Specifically, the undersigned counsel is the director of a civil legal aid organization, holds both consumer law as well as class action experience, is also committed to obtaining a just resolution of this dispute to the benefit of all Oak Point Rent-Payer Class members and similarly lacks any reason because of which he may fail to vigorously seek the same.

103.    Insofar as the Oak Point Defendants uniformly apply the same rent structure to all Oak Point residents or tenants, the injunction sought by Ms. Lee and the MFM through this

action is appropriate with respect to the Oak Point Rent-Payer Class as a whole and will not require the participation of individual Class members to implement.

2.      Chapter 93A, § 9(2)

104.    Ms. Lee and the MFM – standing in the shoes of its members – bring their Massachusetts Consumer Protection Act claims on behalf of a putative class of more than 975 residents or tenants who currently reside in or are otherwise obligated to pay rent to Oak Point ("Oak Point Rent-Payer Class").

105.    Ms. Lee and the MFM members who currently pay rent at Oak Point are similarly situated to all members of the Oak Point Rent-Payer Class insofar as Lee, those MFM members and the Oak Point Rent-Payer Class members are all subject to the same unlawful rent structure, in which residents or tenants who lease similar home sites and receive similar services in exchange for their rent pay disparate rents.

106.    Ms. Lee and the MFM members who currently pay rent at Oak Point continue to suffer an injury similar to the injury suffered by all members of the Oak Point Rent-Payer Class insofar as they are all overpaying rent.

107.    Ms. Lee, the MFM and undersigned counsel have demonstrated that they can and will both fairly and adequately protect the interests of Oak Point Rent-Payer Class members in pursuing this action.

108.    Specifically, the MFM is a nonprofit organization dedicated to advocating for the rights of manufactured housing community residents, is committed to obtaining a just resolution of this dispute to the benefit of all Oak Point Rent-Payer Class members and lacks any reason because of which it may fail to vigorously seek the same.

109.     Specifically, Ms. Lee has a demonstrated track-record of being engaged on important civic issues affecting Oak Point, is committed to obtaining a just resolution of this dispute to the benefit of all Oak Point Rent-Payer Class members and lacks any reason because of which she may fail to vigorously seek the same.

110.     Specifically, the undersigned counsel is the director of a civil legal aid organization, holds both consumer law as well as class action experience, is also committed to obtaining a just resolution of this dispute to the benefit of all Oak Point Rent-Payer Class members and similarly lacks any reason because of which he may fail to vigorously seek the same.

COUNT I
BY EDWIN BARTOK ON BEHALF OF HIMSELF
AND THE MILLER'S WOODS CLASS
CONSUMER PROTECTION ACT – MASS. GENERAL LAWS C. 93A, § 9
MANUFACTURED HOUSING ACT – MASS. GENERAL LAWS C. 140, § 32L(2)
<u>AS TO THE MILLER'S WOODS DEFENDANTS</u>

111.     Paragraphs 1 through 110 are incorporated herein, as if fully restated below.

112.     Mr. Bartok and Miller's Woods Class members are each a person, as that term is used in Section 9(1) of Massachusetts General Laws Chapter 93A.

113.     The Miller's Woods Defendants are each a person engaged in the conduct of a trade or commerce, as those terms are used in Sections 2(a) and 9(1) of Massachusetts General Laws Chapter 93A – specifically as either an operator or licensee, as those terms are used in Section 10.01 of Code of Massachusetts Regulations Title 940.

114.     The implementation of a rent structure by the Miller's Woods Defendants at Miller's Woods in which residents or tenants have leased similar home sites and have received similar services in exchange for their rent but have paid disparate rents has been an unfair

business practice, as those terms are used in Sections 2(a) and 9(1) of Massachusetts General Laws Chapter 93A and Section 32L of Massachusetts General Laws Chapter 140.

115.    The Miller's Woods Defendants have known or should have known that said rent structure violated the Massachusetts Manufactured Housing Act and their implementation of the same has been willful.

116.    Alternatively, the Miller's Woods Defendants have known or should have known that said rent structure violated the Massachusetts Manufactured Housing Act and their failure to make a reasonable settlement offer was in bad faith.

117.    Implementation of said rent structure by the Miller's Woods Defendants has injured Mr. Bartok and each member of the Miller's Woods Class.

COUNT II<br>
BY BARBARA LEE ON BEHALF OF HERSELF<br>
AND THE OAK POINT CLASS<br>
CONSUMER PROTECTION ACT – MASS. GENERAL LAWS C. 93A, § 9<br>
MANUFACTURED HOUSING ACT – MASS. GENERAL LAWS C. 140, § 32L(2)<br>
<u>AS TO THE OAK POINT DEFENDANTS</u>

118.    Paragraphs 1 through 117 are incorporated herein, as if fully restated below.

119.    Ms. Lee and Oak Point Class members are each a person, as that term is used in Section 9(1) of Massachusetts General Laws Chapter 93A.

120.    The Oak Point Defendants are each a person engaged in the conduct of a trade or commerce, as those terms are used in Sections 2(a) and 9(1) of Massachusetts General Laws Chapter 93A – specifically as either an operator or licensee, as those terms are used in Section 10.01 of Code of Massachusetts Regulations Title 940.

121.    The implementation by the Oak Point Defendants of a rent structure at Oak Point in which residents or tenants have leased similar home sites and have received similar services in exchange for their rent but have paid disparate rents has been an unfair business practice, as

those terms are used in Sections 2(a) and 9(1) of Massachusetts General Laws Chapter 93A and Section 32L of Massachusetts General Laws Chapter 140.

122.    The Oak Point Defendants have known or should have known that said rent structure violated the Massachusetts Manufactured Housing Act and their implementation of the same has been willful.

123.    Alternatively, the Oak Point Defendants have known or should have known that said rent structure violated the Massachusetts Manufactured Housing Act and their failure to make a reasonable settlement offer was in bad faith.

124.    Defendants' implementation of said rent structure has injured Ms. Lee and each member of the Oak Point Class.

COUNT III
BY EDWIN BARTOK ON BEHALF OF HIMSELF
AND THE MILLER'S WOODS RENT-PAYER CLASS &
BY THE MANUFACTURED HOME FEDERATION OF MASSACHUSETTS, INC.
ON BEHALF OF ITS MEMBERS AND THE MILLER'S WOODS RENT-PAYER CLASS
CONSUMER PROTECTION ACT – MASS. GENERAL LAWS C. 93A, § 9
MANUFACTURED HOUSING ACT – MASS. GENERAL LAWS C. 140, § 32L(2)
AS TO THE MILLER'S WOODS DEFENDANTS

125.    Paragraphs 1 through 124 are incorporated herein, as if fully restated below.

126.    Mr. Bartok, the MFM members who pay rent at Miller's Woods and Miller's Woods Rent-Payer Class members are each a person, as that term is used in Section 9(1) of Massachusetts General Laws Chapter 93A.

127.    The Miller's Woods Defendants are each a person engaged in the conduct of a trade or commerce, as those terms are used in Sections 2(a) and 9(1) of Massachusetts General Laws Chapter 93A – specifically as either an operator or licensee, as those terms are used in Section 10.01 of Code of Massachusetts Regulations Title 940.

128.   The implementation of a rent structure by the Miller's Woods Defendants at Miller's Woods in which residents or tenants lease similar home sites and receive similar services in exchange for their rent but pay disparate rents is an unfair business practice, as those terms are used in Sections 2(a) and 9(1) of Massachusetts General Laws Chapter 93A and Section 32L of Massachusetts General Laws Chapter 140.

129.   The implementation of said rent structure by the Miller's Woods Defendants continues to injure Mr. Bartok, MFM members who pay rent at Miller's Woods and members of the Miller's Woods Rent-Payer Class.

130.   The ongoing implementation of said rent structure by the Miller's Woods Defendants will irreparably harm Mr. Bartok, MFM members who pay rent at Miller's Woods and members of the Miller's Woods Rent-Payer Class by requiring them to pursue repeated legal action to enforce their rights under Section 32L(2) of the Massachusetts Manufactured Housing Act.

131.   Equitable relief requiring the Miller's Woods Defendants to comply with their obligations under the Massachusetts Manufactured Housing Act simply requires them to follow the law and will substantially benefit Mr. Bartok, MFM members who pay rent at Miller's Woods, members of the Miller's Woods Rent Payer Class and the general public.

COUNT IV
BY BARBARA LEE ON BEHALF OF HERSELF
AND THE OAK POINT RENT-PAYER CLASS &
BY THE MANUFACTURED HOME FEDERATION OF MASSACHUSETTS, INC.
ON BEHALF OF ITS MEMBERS AND THE OAK POINT RENT-PAYER CLASS
CONSUMER PROTECTION ACT – MASS. GENERAL LAWS C. 93A, § 9
MANUFACTURED HOUSING ACT – MASS. GENERAL LAWS C. 140, § 32L(2)
AS TO THE OAK POINT DEFENDANTS

132.   Paragraphs 1 through 131 are incorporated herein, as if fully restated below.

133.    Ms. Lee, the MFM members who pay rent at Oak Point and Oak Point Rent-Payer Class members are each a person, as that term is used in Section 9(1) of Massachusetts General Laws Chapter 93A.

134.    The Oak Point Defendants are each a person engaged in the conduct of a trade or commerce, as those terms are used in Sections 2(a) and 9(1) of Massachusetts General Laws Chapter 93A – specifically as either an operator or licensee, as those terms are used in Section 10.01 of Code of Massachusetts Regulations Title 940.

135.    The implementation of a rent structure by the Oak Point Defendants at Oak Point in which residents or tenants lease similar home sites and receive similar services in exchange for their rent but pay disparate rents is an unfair business practice, as those terms are used in Sections 2(a) and 9(1) of Massachusetts General Laws Chapter 93A and Section 32L of Massachusetts General Laws Chapter 140.

136.    The implementation of said rent structure by the Oak Point Defendants continues to injure Ms. Lee, MFM members who pay rent at Oak Point and members of the Oak Point Rent-Payer Class.

137.    The ongoing implementation of said rent structure by the Oak Point Defendants will irreparably harm Ms. Lee, MFM members who pay rent at Oak Point and members of the Oak Point Rent-Payer Class by requiring them to pursue repeated legal action to enforce their rights under Section 32L(2) of the Massachusetts Manufactured Housing Act.

138.    Equitable relief requiring the Oak Point Defendants to comply with their obligations under the Massachusetts Manufactured Housing Act simply requires them to follow the law and will substantially benefit Ms. Lee, MFM members who pay rent at Oak Point, members of the Oak Point Rent Payer Class and the general public.

<u>REQUESTED RELIEF</u>

WHEREFORE, Plaintiffs request that the Court:

A.      Enter judgment against the Miller's Woods Defendants, jointly or severally, as applicable, awarding to Mr. Bartok and the members of the Miller's Woods Class the actual, incidental, consequential or multiple damages owed to them or the maximum amount of statutory damages provided or permitted by law;

B.      Enter judgment against the Oak Point Defendants, jointly or severally, as applicable, awarding to Ms. Lee and the members of the Oak Point Class the actual, incidental, consequential or multiple damages owed to them or the maximum amount of statutory damages provided or permitted by law;

C.      Incorporate into said judgment an injunction – for the benefit of Mr. Bartok, the MFM (on behalf of its members) and the Miller's Woods Rent-Payer Class – ordering the Miller's Woods Defendants to implement a rent structure at Miller's Woods that complies with Section 32L(2) of the Massachusetts Manufactured Housing Act;

D.      Incorporate into said judgment an injunction – for the benefit of Ms. Lee, the MFM (on behalf of its members) and the Oak Point Rent-Payer Class – ordering the Oak Point Defendants to implement a rent structure at Oak Point that complies with Section 32L(2) of the Massachusetts Manufactured Housing Act;

E.      Incorporate into said judgment an award of the litigation costs and reasonable attorney's fees associated with the prosecution of this action against the Miller's Woods Defendants or the Oak Point Defendants, as applicable, by Mr. Bartok, Ms. Lee, the MFM and the members of the Classes they respectively represent;

F.      Incorporate into said judgment an award of pre- and post-judgment interest on all applicable amounts owed to Mr. Bartok, Ms. Lee, the MFM and the members of the Classes they respectively represent; and

G.      Enter any further order the Court deems necessary for the just and proper resolution of this matter.

Respectfully submitted,                         This 20th day of May, 2021
EDWIN BARTOK,
BARBARA LEE, and
THE MANUFACTURED HOME
FEDERATION OF MASSACHUSETTS, INC.

By their attorney,

/s/ Ethan R. Horowitz
_____
Ethan R. Horowitz
BBO # 674669
Northeast Justice Center
50 Island Street, Suite 203B
Lawrence MA 01840
(978) 888-0624
ehorowitz@njc-ma.org

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 20, 2021, the foregoing First Amended Class Action Complaint was electronically filed with the Clerk of the Court through the CM/ECF system, which will send notification of such filing to registered participants, including counsel for the Defendants.

/s/ Ethan Horowitz

_____

Dated: May 20, 2021

Ethan R. Horowitz
BBO # 674669